**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luke Paulk,<br><br>        Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-18-02485-PHX-SPL<br><br>**ORDER** |

      Plaintiff Luke Paulk seeks judicial review of the denial of his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g).

      Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) according inadequate weight to the opinions of Plaintiff's treating providers; (2) failing to consider Plaintiff's carpal and cubital tunnel syndromes as medically determinable impairments; and (3) rejecting Plaintiff's subjective complaints.

      A person is considered "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss*

*v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Court must review the record as a whole and consider both the evidence that supports and the evidence that detracts from the ALJ's determination. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**I.     DISCUSSION**

    **A. MEDICAL OPINIONS**

Plaintiff argues that the ALJ accorded inadequate weight to the opinions of Plaintiff's treating providers Nurse Practitioner Martha Benavides, Dr. Tushar Modi, Dr. Srinivasa Palnati, and Dr. Kulbashan Paul. In particular, Plaintiff notes that Nurse Practitioner Benavides, Dr. Modi, Dr. Palnati, and Dr. Paul all opined that Plaintiff can sit, stand, and walk less than one hour each during an eight-hour work day (AR[1] 469, 510, 617-618).

> To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.

*Bayliss*, 427 F.3d at 1216 (internal citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

First, the ALJ accorded little weight to the combined medical opinion of Nurse Practitioner Benavides and Dr. Modi because their assessments of Plaintiff's ability to sit, stand, and walk "are overly restrictive given the minimal positive findings on the physical examinations," and because "despite the claimant's allegations of back and leg pain, the findings from the physical examinations generally documented normal gait" (AR 38). An

---

[1] Administrative Record

2

ALJ may consider the supportability of a medical opinion as a factor in determining its weight, giving more weight to opinions that cite more relevant evidence, "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3).

In reviewing the record, the Court finds a lack of substantial evidence to support the ALJ's assertion of minimal objective findings to support Nurse Practitioner Benavides and Dr. Modi's opinion. Their records repeatedly note objective findings that Plaintiff suffered limited flexion and extension of the lumbar spine, hypersensitivity in the sacroiliac joints and lumbar paraspinous areas, and, at times, sacroilitis (AR 390, 395, 398, 401, 404, 407, 410, 414, 418, 422, 478, 481, 485, 491, 494). Their records further include Plaintiff's MRI results showing "left paracentral and left lateral recess disc extrusion at L4-L5 which causes prominent mass effect on the transiting left L5 nerve root" (AR 421).

To support her conclusion, the ALJ cited Dr. Paul's repeated notes that Plaintiff was able to ambulate without an assistive device (AR 38). The ALJ, however, has not explained how these findings of normal gait are inconsistent with the limitations assessed by Nurse Practioner Benavides and Dr. Modi. In fact, the same medical reports on which the ALJ relied also noted repeatedly that Plaintiff was "[u]nable to sit down" (AR 541, 544, 547, 549, 551, 554, 557, 561, 565, 569, 573, 576). The Court thus finds the ALJ lacked a specific and legitimate reason to discount the opinion of Nurse Practitioner Benavides and Dr. Modi. *See Elgrably v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04760-PHX-JAT, 2018 WL 5264074, at *7 (D. Ariz. Oct. 23, 2018) (finding broad statement that a claimant showed normal gait was not a specific and legitimate reason for giving medical opinions little weight).

Second, the ALJ accorded little weight to Dr. Palnati's medical opinion in part because "[s]he only examined the claimant a small number of times over a relatively brief period," and "the treating relationship did not last long enough for Dr. Palnati to have obtained a longitudinal picture of the claimant's medical condition" (AR 38). An ALJ may give a treating physician's medical opinion little weight "if the treating physician has not seen the patient long enough to 'have obtained a longitudinal picture' of the patient's

impairments." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)(i)). The Court finds the ALJ properly weighed Dr. Palnati's medical opinion based on the short length of the treating relationship.

Third, the ALJ accorded little weight to Dr. Paul's medical opinion because "it is conclusory and unsupported by the record" (AR 39). In reviewing the record, however, the Court finds a lack of substantial evidence to support the ALJ's assertion. Dr. Paul documented Plaintiff's reduced range of motion in a positive supine straight leg raising test, reflex loss, muscle spasms, and muscle weakness (AR 617). Dr. Paul cited Plaintiff's MRI results and repeatedly noted a diagnosis of "[d]egeneration of lumbar or lumbosacral intervertebral disc" (AR 557; *see also* AR 545, 547, 549, 552, 554, 561, 566, 570, 574, 577, 616). Dr. Paul also indicated repeatedly that Plaintiff was "[u]nable to sit down" at his examinations (AR 541, 544, 547, 549, 551, 554, 557, 561, 565, 569, 573, 576). In addition to Dr. Paul's records, the ALJ cited the medical records of Nurse Practitioner Benavides and Dr. Modi to assert that there were minimal clinical findings to support Dr. Paul's opinion (AR 39). However, as discussed above, the Court finds ample objective evidence in the record to support the opinion of Nurse Practitioner Benavides and Dr. Modi, which was in accord with Dr. Paul's opinion as to Plaintiff's ability to sit, stand, and walk for less than one hour each during an eight-hour workday (AR 469, 618). Thus, the Court finds the ALJ lacked a specific and legitimate reason to discount the opinion of Dr. Paul.

### B. CARPAL AND CUBITAL TUNNEL SYNDROMES

Defendant concedes that the ALJ erred in finding that Plaintiff's diagnosed carpal and cubital tunnel syndromes are not medically determinable impairments, but contends that it was harmless error. An error is harmless "if it is inconsequential to the ultimate nondisability determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citation and internal quotation marks omitted).

Plaintiff argues, in part, that the ALJ's failure to consider his carpal and cubital tunnel syndromes as part of the residual functional capacity assessment was harmful error. In determining an individual's residual functional capacity, Social Security Ruling 96-8p

requires an ALJ to consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" as they may, in combination with the limitations and restrictions of other impairments, be consequential to the disability determination. SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996). Defendant argues that the record does not show that Plaintiff has limitations or restrictions due to his carpal and cubital tunnel syndromes.

The Court finds that the record suggests Plaintiff may have limitations and restrictions due to his carpal and cubital tunnel syndromes. Nurse Practitioner Benavides, Dr. Modi, and Dr. Paul all opined that Plaintiff's ability to grasp objects is limited (AR 470, 511, 619). Nurse Practitioner Benavides and Dr. Modi concluded that Plaintiff's ability to push and pull is limited (AR 470, 511). Dr. Paul also noted that Plaintiff's fine manipulation and reaching abilities are limited (AR 619). Additionally, Plaintiff testified that he has numbness in his hands and limited reaching ability (AR 65-66). Because the ALJ gave no consideration to these potential limitations and restrictions in the residual functional capacity analysis, the Court finds that the ALJ's failure to classify Plaintiff's carpal and cubital tunnel syndromes as medically determinable impairments is reversible harmful error.

### C. PLAINTIFF'S CREDIBILITY

Plaintiff argues the ALJ erred in discounting his subjective symptom complaints. In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id.* Here, the ALJ found Plaintiff's medical impairments could reasonably be expected to cause some of the alleged symptoms, but concluded that his statements as to the intensity or limiting effects of those symptoms were not entirely credible (AR 36). The ALJ found

that (1) Plaintiff's complaints were inconsistent with his daily activities, (2) he received "minimal and conservative treatment," and (3) his described symptoms were not fully supported by the medical record (AR 36).

First, the ALJ found that, "despite [Plaintiff's] impairments, he has engaged in a somewhat normal level of daily activity and interaction" inconsistent with his symptom testimony at his hearing (*Id.*). Specifically, the ALJ noted that Plaintiff's medical records indicated he performed light household chores, went grocery shopping, prepared meals, and walked his children to the bus stop (*Id.*). The U.S. Court of Appeals for the Ninth Circuit has held that a plaintiff's level of activity should only weigh against credibility when it is inconsistent with the claimed limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In addition, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *id.*, particularly considering "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (finding activities including preparing meals, cleaning, and caring for a child were not inconsistent with claimed neck and back pain and did not preclude disability).

In this case, the medical records cited by the ALJ state that Plaintiff told a doctor he "sometimes" does his own laundry, prepares meals, and helps with light chores, but that his wife and kids do most of the housework (AR 657). While Plaintiff did say he picks up his room and shops at local stores, he also told the doctor that he only leaves the house two or three times per week and that he spends most of the day listening to the radio or watching television (*Id.*). The ALJ did not explain how this level of activity is inconsistent with Plaintiff's hearing testimony. Plaintiff testified that he does not do household chores because it hurts too much if he tries (*Id.* at 73). Although he stated that he sometimes goes grocery shopping, he described having to lean on the cart as a walker and stated his wife takes items off the shelves to put in the cart (*Id.*). Plaintiff also indicated that he typically spends most of the day resting and listening to the radio, alternating every ten to fifteen

6

minutes between sitting, walking, kneeling, and laying down (*Id.* at 71-72). The Court finds that nothing in the record indicates daily activities by the Plaintiff are transferable to a workplace setting such that his symptom testimony may be discounted on this basis. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Second, the ALJ determined that Plaintiff received minimal and conservative treatment consisting of pain-relieving medication without adverse side effects (AR 36-37). The Ninth Circuit has held that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, the ALJ must consider "possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017). Plaintiff argues that he received conservative treatment only because a more drastic plan involving surgery could not be pursued due to his loss of health insurance and his body habitus (Doc. 12 at 13, citing AR 523-24, 528, 530-32, 612). The ALJ did properly consider Plaintiff's loss of health insurance as an explanation for the conservative treatment plan (AR 37). However, there is no indication that the ALJ considered the body habitus explanation. The Court finds that the ALJ erred in failing to do so.

Finally, the ALJ concluded that Plaintiff's symptom testimony was "less than fully supported by the objective medical records" (AR 36). The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Having found the ALJ's other justifications for discounting Plaintiff's symptom testimony were reached in error, this reason alone cannot suffice. Accordingly, the Court finds that the ALJ lacked specific, clear, and convincing reasons to reject Plaintiff's symptom testimony.

## II. CONCLUSION

It is in this Court's discretion to reverse and remand for an award of benefits or

further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). In this case, remand is appropriate to properly consider the medical opinion of Nurse Practitioner Benavides and Dr. Modi, the medical opinion of Dr. Paul, Plaintiff's carpal and cubital tunnel syndromes, and Plaintiff's symptom testimony. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 2nd day of August, 2019.

Honorable Steven P. Logan
United States District Judge